UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| RALPH W. CLOSE and LAURA A. LARSON, individually as parents of the decedent JAMES ROBERT CLOSE,<br><br>Plaintiffs,<br><br>v.<br><br>PIERCE COUNTY, WASHINGTON; PIERCE COUNTY SHERIFF PAUL PASTOR; STEVE PARR, EDWARD CORRELL; JOSEPH GORMAN; and TODD KLEMME;<br><br>Defendants. | No. C09-5023RJB<br><br>AMENDED COMPLAINT FOR DAMAGES AND JURY DEMAND |

Plaintiffs Ralph W. Close and Laura A. Larson, parents of their deceased son, James Robert Close, claim as follows:

I.   PARTIES

1.1   Plaintiffs.

1.1.1   Ralph W. Close is an adult citizen and resident of Clallam County, Washington in the Western District of Washington.

1.1.2   Laura A. Larson is an adult citizen and resident of King County, Washington in the Western District of Washington.

AMENDED COMPLAINT FOR DAMAGES - 1
C09-5023RJB

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9178.1 ca220102

1.1.3   Plaintiff Close and Plaintiff Larson are the natural parents of James Robert Close who committed suicide while in custody at the Pierce County Detention and Corrections Center ("PCDCC") in Tacoma, Washington on June 16, 2006.

2.2   Defendants.

2.2.1   Defendant Pierce County owns and operates the PCDCC, which is located in the Western District of Washington.

2.2.2   Defendant Pierce County Sheriff Paul Pastor is the county official with final authority over policy implementation and training at the PCDCC.

2.2.3   Defendant Detective Steve Parr is an officer of the Lakewood Police Department. He participated in the arrest of and transported James Close to the PCDCC.

2.2.4   Defendant Edward Correll was one of the PCDCC corrections officers who received James Close at the PCDCC from Detective Parr and conducted the booking process of James Close on the morning of June 16, 2006.

2.2.5   Defendant Joseph Gorman was one of the corrections officers who conducted the booking process of James Close at the PCDCC on the morning of June 16, 2006.

2.2.6   Defendant Todd Klemme was the PCDCC corrections officer who fingerprinted James Close.

2.2.7   All the actions by the individual defendants described in this Complaint were taken under color of the laws of the State of Washington.

2.2.8   All the actions by the individual defendants described in this Complaint were taken within the scope of their employment pursuant to the policies, customs and practices of Pierce County.

AMENDED COMPLAINT FOR DAMAGES - 2
C09-5023RJB

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9178.1 ca220102

### III. JURISDICTION AND VENUE

3.1 This Court has jurisdiction over this case under 28 U.S.C. § 1343, as plaintiffs are claiming a violation of rights protected by the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

3.2 Venue is properly located in this Court because the plaintiffs and at least some of the defendants reside in the Western District of Washington, and the events occurred in the Western District of Washington.

### IV. FACTS

4.1 <u>Events Leading to James Close's In-Custody Suicide.</u>

4.1.1 On June 6, 2006, plaintiff Ralph Close, father of decedent James Close, contacted Special Agent ("SA") Monte Shaide of the Federal Bureau of Investigation ("FBI"), who was working with the Pierce County Violent Crime Task Force ("PCVCTF") to investigate a bank robbery that occurred on March 21, 2006 involving James Close. During that contact, Ralph Close told SA Shaide about James Close's role in the robbery. Ralph Close also mentioned that James Close had been frustrated because he could not find a job due to prior convictions, had suicidal tendencies, suffered from fetal alcohol syndrome, and had been diagnosed with depression and prescribed anti-depressant medication.

4.1.2 Using information provided by Ralph Close, members of the PCVCTF obtained a warrant from a Pierce County Superior Court on June 15, 2006 that authorized the search of Ralph Close's mobile home in Sequim, Washington where James Close was staying.

4.1.3 On June 16, 2006, at approximately 8:00 a.m., the PCVCTF team executed the warrant and arrested James Close. After the arrest, James Close was interviewed at the Washington State Patrol office in Clallam County by SA Shaide, Detective Sergeant Todd

AMENDED COMPLAINT FOR DAMAGES - 3
C09-5023RJB

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9178.1 ca220102

Karr of the Pierce County Sheriff's Department, and Detective Steve Parr of the Lakewood Police Department. During that interview, James Close confessed that he committed the March 21, 2006 bank robbery out of desperation for money. The interview ended at 8:53 a.m. After the taped interview, James Close told these officers that he was bipolar, that he was not on medication, and that he was prone to extreme mood swings.

    4.1.4 After confessing to Detective Parr, Detective Sergeant Karr, and SA Shaide, in the presence of these officers, James Close expressed anger that his father, Ralph Close, had informed the police of his whereabouts and involvement in the bank robbery. SA Shaide and Detective Sergeant Karr also knew that James Close had been voluntarily committed in Tacoma, Washington on account a suicide attempt by asphyxiation in January 2006.

    4.1.5 SA Shaide and/or Detective Sergeant Karr shared with the PCVCTF team the information about James Close's bipolar disorder, his potential for extreme mood swings, the January 2006 attempted suicide, and that he had had a violent outburst the night before on June 15. In addition, these officers shared with the PCVCTF team that the Close family had concerns that James Close was potentially suicidal.

    4.1.6 At approximately 9:00 a.m., Detective Parr and Detective Sergeant Karr escorted James Close to his home to identify items related to the robbery. While at the house, James Close encountered his father, became enraged because he had turned him into the authorities and had to be controlled by the arresting officers.

    4.1.7 After the arrest, Detective Sergeant Karr filled out the PCDCC Booking and Special Identification Form ("Booking Form") and made the following notations: The boxes for "Mental Problems?"; "Suicide History or Tendencies?"; and "Any Signs of Depression?" were all checked "Yes." Under "other remarks," Detective Sergeant Karr wrote in capital letters:

AMENDED COMPLAINT FOR DAMAGES - 4
C09-5023RJB

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9178.1 ca220102

"HAS ATTEMPTED SUICIDE IN THE PAST. MAY BE BI-POLAR. BECAME VERY ANGRY AFTER CONFESSING." At the top of the form, in large bold print, Detective Dean Dumais, who was assigned to work under Detective Sergeant Karr and accompanied Detective Parr, wrote: "SUICIDE WATCH." Detective Sergeant Karr later stated that Detective Dumais wrote this additional warning "to make sure nobody would miss it." Detective Sergeant Karr also made sure that Detective Parr understood to give the Booking Form to the PCDCC booking officers. Plaintiffs attach the Booking Form as Attachment A.

   4.1.8 At approximately 10:00 a.m., Detective Parr and Detective Dumais took James Close from his residence to Gig Harbor, Washington. Detective Dumais got out there and Detective Parr drove James Close to the PCDCC. During the ride, Detective Parr saw James Close cry and asked him what was wrong. In response, James Close said, "[m]y dog's gonna be dead by the time I get out and knowin' my girlfriend, she's gonna be dumb enough to stand by me until I get out."

   4.1.9 Upon arrival at the PCDCC, Detective Parr did not verbally inform any booking officer that the arresting officers and the Close family were concerned about the risk that James Close would commit suicide, and that James Close was at times morose during the ride.

   4.1.10 At 11:48 a.m., James Close was booked by Officers Joseph Gorman and Edward Correll at the PCDCC. As part of that process, Officers Gorman and Correll received and looked at the Booking Form with the "SUICIDE WATCH" designation and the other suicide warnings described above. Officers Gorman and Correll later acknowledged during a subsequent Pierce County Sherriff's Department internal investigation into the suicide ("the

AMENDED COMPLAINT FOR DAMAGES - 5
C09-5023RJB

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9178.1 ca220102

internal investigation"), that they confirmed with James Close that he had attempted suicide in the previous six months.

4.1.11 Officer Correll was the first Pierce County corrections officer to make contact with James Close and voluntarily took on the informal role of the "patdown" officer in the booking process. This consisted of a "pat/search" security check of James Close's body for contraband. Although Officer Correll later claimed during the internal investigation that he did not see the "SUICIDE WATCH" designation, he has admitted that he reviewed the arresting officer's Booking Form, saw a "notation that he had attempted suicide in the past" and that "he may . . . have some bipolar issues," and "noticed that there were some things about suicide on there."

4.1.12 Officer Correll also assumed responsibility for asking James Close medical screening questions on the Inmate Health Screening Form. In purported response to these questions, Officer Correll checked "No" to the boxes corresponding to "Suicidal Now," "Appears Psychotic," or "Suicide Attempt in Last 2 Months." On this form Officer Correll did indicate that James Close had a "Mental Health Diagnosis" of "Bi-Polar," but Officer Correll did not call a booking nurse or mental health professional to conduct a mental health evaluation.

4.1.13 During this process, Officer Correll had the duty to "dress" James Close either in gray clothing appropriate for the general population or in a "suicide smock," which would indicate he was to be put in a suicide observation cell. In deliberate disregard of the information he had, Officer Correll opted to dress James Close in grays.

4.1.14 Officer Gorman, as the "booking officer," conducted the next step of the booking process. Officer Correll stated in the internal investigation that he conferred with Officer Gorman and "pointed out what the arresting officer had written" before passing James

AMENDED COMPLAINT FOR DAMAGES - 6
C09-5023RJB

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9178.1 ca220102

Close to Officer Gorman to continue the booking process. Officer Gorman admittedly reviewed the remainder of the Booking Form, although in the internal investigation he later claimed not to see the bold-print "SUICIDE WATCH" warning at the top. Officer Gorman specifically noted that the boxes for "Mental Problems?"; "Suicide History or Tendencies?"; and "Any Signs of Depression?" were all checked "Yes," and that in the "other remarks" box that the arresting officer had written "HAS ATTEMPTED SUICIDE IN THE PAST. MAY BE BI-POLAR. BECAME VERY ANGRY AFTER CONFESSING." In deliberate disregard of this danger, Officer Gorman did not call for a mental health professional or place James Close in a suicide observation cell.

4.1.15 At the PCDCC booking desk on June 16, 2006, there was no mental health professional available to consult with James Close. According to Officer Gorman, there was never a mental health professional available at the booking desk and a mental health care professional would "probably not" be available for him to contact "because they don't answer their phones" or they are "busy" "in their offices."

4.1.16 As part of the booking process, Officer Josef Crews completed the PCDCC's "Initial Housing Assignment," a schematic for placing all detainees within the detention facility according to security, medical, mental health and other concerns. Officer Crews completed this schematic and elected not to place James Close in the "Suicide Observation Cell." Instead, Officer Crews placed James Close in a "level 2 environment." A "level 2 environment" is two-person cell at the PCDCC, and a classification that is informed only by security issues associated with a detainee's criminal charge and not by any mental health criteria. When James Close got to the cell, his designated cellmate was not present.

AMENDED COMPLAINT FOR DAMAGES - 7
C09-5023RJB

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9178.1 ca220102

4.1.17  At approximately 1:00 p.m., after the booking process was complete, the PCDCC issued James Close blankets, towel and a sheet, and transferred him to a cell in the PCDCC's 3-West C wing that housed the "level 2 environment." Officer Tim Peeler, who placed James close in his cell, observed that he was "quiet" and had a "1000 yard stare."

4.1.18  At 2:55 p.m., Jerry Coombs, the cellmate assigned to James Close's cell, was returned there. When Officers Bryan Buckingham and Jonathan Madden opened the cell door, they discovered James Close hanging from his bed sheet without a pulse.

4.1.19  After unsuccessful attempts to use CPR, James Close was transported to Tacoma General Hospital.  He never regained consciousness despite some indication that he aspirated shortly before Tacoma Fire and Rescue arrived at 3:05 p.m.

4.1.20  On June 17, 2006, at 6:50 p.m., life support to preserve James Close's organs was discontinued and he was pronounced dead.

4.2     <u>Defendants Pierce County and Sheriff Pastor Knew That Protocols For Inmate Health Care Evaluation and Booking at the PCDCC Did Not Meet National Standards and Were Likely to Result in Preventable Suicides.</u>

4.2.1   At the time of James Close's suicide, Pierce County was required to consider National Commission on Correctional Health Care (NCCHC) standards in establishing health care standards for the PCDCC.

4.2.2   At the time of James Close's suicide, Pierce County was required to have at least one licensed nurse practitioner on site at the PCDCC to assess prisoners during the booking process and make any medical professional evaluation as necessary.

4.2.3   At the time of James Close's suicide, Pierce County was to have developed and implemented a detainee classification system during the booking process that called for staff to ask questions about mental health issues and suicide risk and properly record

AMENDED COMPLAINT FOR DAMAGES - 8
C09-5023RJB

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9178.1 ca220102

detainee answers to these questions. Pierce County was also required to provide training to staff regarding mental health and suicide risk assessment, was required to allocate sufficient staffing for this procedure, and was prohibited from using officers to perform booking procedures who had not been trained in such protocols.

4.2.4 At the time of James Close's suicide, and well before, Pierce County and Sheriff Pastor were aware of the following deficiencies at the PCDCC: (A) The PCDCC suffered from deficient nurse staffing, a shortage that resulted in the PCDCC not meeting the NCCHC standards for performing mental health screening and evaluations. (B) The PCDCC fell below the NCCHC standard for mental health screening and evaluation, with an identified need to develop multiple mental health systems including training booking officers to recognize signs of mental health problems, coordination with arresting officer comments to conduct intake screening, and asking questions on detainee past history. (C) The PCDCC did not meet the NCCHC standards with respect to on-going training for suicide prevention.

4.2.5 In deliberate disregard of the dangers they posed, Pierce County and Sheriff Pastor allowed these deficiencies to persist, and on June 16, 2006, they led to James Close's death.

## V. CLAIMS

5.1 The above-described acts and omissions of the individual defendants amount to deliberate indifference to the known risk that James Close would commit suicide, leaving his parents without their son. The loss of James Close's life due to this deliberate indifference deprived the plaintiffs of their liberty interest in the companionship of their son without due process of law, in violation of their rights under the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

AMENDED COMPLAINT FOR DAMAGES - 9
C09-5023RJB

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9178.1 ca220102

5.2     Defendants Pierce County and Sheriff Pastor were on notice by September 2005 that the PCDCC suffered from deficient nurse staffing, and that this staff shortage resulted in its not meeting the NCCHC standards for performing mental health screening and evaluations. By failing to remedy this known shortage, Defendant County pursued policies that were deliberately indifferent to the risk of suicide by pretrial detainees like James Close who required mental health evaluation but did not receive it, which resulted in his preventable suicide in violation of the parent-plaintiffs' rights under the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

5.3     Defendants Pierce County and Sheriff Pastor were on notice by September 2005 that the PCDCC did not meet NCCHC standards for mental health screening and evaluation, including the mandate that PCDCC needed to establish multiple mental health systems such as training for booking officers to recognize signs of mental health problems and to coordinate with arresting officer comments to conduct intake screening. Defendants Pierce County and Sheriff Pastor were also on notice by September 2005 that the PCDCC did not meet the NCCHC standards with respect to on-going training for suicide prevention. These failures to develop protocols and/or train corrections officers in such protocols amounted to deliberate indifference to inmates like James Close who had serious mental health concerns, including the known risk of suicide, which resulted in his preventable suicide in violation of the parent-plaintiffs' rights under the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

5.4     Absent the acts and omissions of the individual defendants and the staffing and training deficiencies on the County's part, James Close's suicide on June 16, 2006 would not have occurred.

C09-5023RJB

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

9178.1 ca220102

## VI. RELIEF REQUESTED

WHEREFORE, the plaintiffs request relief as follows:

6.1 Compensatory damages;

6.2 Punitive damages from any individual defendant found to have caused James Robert Close's death through deliberate indifference to constitutional rights.

6.3 Costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

6.4 Such other relief as may be just.

DATED this 22nd day of January, 2009.

MacDONALD HOAGUE & BAYLESS

By _____
Timothy K. Ford, WSBA # 5986
David Whedbee, WSBA #35977
Attorneys for Plaintiff

AMENDED COMPLAINT FOR DAMAGES - 11
C09-5023RJB

9178.1 ca220102

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961